UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN S. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01783-SEB-KMB |
| | ) | |
| JOHN M.T. CHAVIS Judge in his personal capacity, | ) | |
| MELISSICA FLIPPEN of the Marion County DRCB, in her personal capacity, | ) | |
| ALEYNE WOOD Case Manager at Marion County DRCB, in her personal capacity, | ) | |
| EMILY LAGENE ANGEL GAL, in her personal capacity, | ) | |
| MEGAN L. GEHRING in her personal capacity, | ) | |
| KRISTY L. MOORE in her personal capacity, | ) | |
| ROBIN B. NIEHAUS in her personal capacity, | ) | |
| ANGELA SWENSON in her personal capacity, | ) | |
| THE STATE OF INDIANA, | ) | |
| CHELSEA A. SHELBURNE, | ) | |
| KIDS' VOICE OF INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING CASE FOR LACK OF
## SUBJECT MATTER JURISDICTION

"The *Rooker-Feldman* doctrine prevents lower federal courts from exercising

jurisdiction over cases brought by state court losers challenging state court judgments

rendered before the district court proceedings commenced." *Jakupovic v. Curran*, 850

F.3d 898, 902 (7th Cir. 2017) (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d

736, 741−42 (7th Cir. 2016)). On September 9, 2022, Plaintiff Brian Moore, who is

1

proceeding *pro se*, filed this cause of action against eleven Defendants associated with his child custody case in state court. The crux of Mr. Moore's Complaint is that he has been harmed by a series of orders issued by the judge overseeing his child custody case, which among other things required his parenting time with his children to be supervised. In their seven motions to dismiss, all Defendants have moved to dismiss Mr. Moore's Complaint in its entirety, some on the grounds that dismissal for lack of subject matter jurisdiction is required under the *Rooker-Feldman* doctrine. Because we conclude that the *Rooker-Feldman* doctrine does, indeed, bar our exercise of jurisdiction over Mr. Moore's Complaint, we shall dismiss this cause of action for lack of subject matter jurisdiction.

## I.    STANDARDS OF REVIEW

We begin by noting that *pro se* complaints, such as that filed here by Mr. Moore, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted). One basis for dismissal advanced in the motions to dismiss Mr. Moore's Complaint is based on a lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Other enumerated grounds for dismissal have been advanced as well. Because "we are required to consider subject-matter jurisdiction as the first question in every case, and we must dismiss this suit if such jurisdiction is lacking," we need not reach Defendants' other grounds for dismissal. *Jakupovic*, 850 F.3d at 902 (quoting *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014)).

2

To survive a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the "burden of supporting the jurisdictional allegations of the complaint by competent proof." *Davis v. City of Indianapolis*, --- F.Supp.3d ----, 2023 WL 1966028, at *2 (S.D. Ind. 2023) (quoting *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980)). Despite being faced with this burden, Mr. Moore has failed to respond to any of the motions to dismiss.[1] When ruling on a motion to dismiss for lack of subject matter jurisdiction, we are required to accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Id.* (quoting *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)). However, we "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *Ezekiel*, 66 F.3d at 897). Many of the state court's orders challenged by Mr. Moore have in their entirety been attached to the motions to dismiss, which we properly consider in the following subject matter jurisdiction inquiry.

## II.    FACTUAL ALLEGATIONS

Mr. Moore is divorced from Defendant Kristy Moore, who is the mother of their two minor children, E.M. and G.M.[2] The impetus for this lawsuit was a series of orders issued

---

[1] The Court notes and the docket reflects that Mr. Moore has not made a single filing in this cause of action since September 9, 2022, when he filed his Complaint and Summons information.

[2] The parties' filings contain the names of Mr. Moore's minor children who, under Rule 5.2(a) of the Federal Rules of Civil Procedure, should have been identified only by their initials. To protect their privacy interests, the Court will use only the children's initials. If the parties file anything further with the Court, they are admonished to use only the children's initials.

in Mr. Moore and Ms. Moore's child custody case by the Honorable John Chavis, Marion County Superior Court Judge, who is named as a Defendant in this lawsuit. Judge Chavis's orders limited the amount of Mr. Moore's parenting time and required that it be supervised. Mr. Moore's challenge to each of these orders is identical—that the court erred in failing to make a specific finding of physical endangerment or emotional impairment pursuant to Indiana Code section 31-14-4-1 before imposing the restriction on his parenting time.[3]

On April 29, 2019, the children's pediatrician filed a complaint with the Indiana Department of Child Services ("DCS"), alleging that Mr. Moore was abusing and/or neglecting his children, prompting DCS to open an investigation into the alleged abuse and/or neglect. On June 17, 2019, Mr. Moore met with DCS Family Case Manager ("FCM") Channing Reed and generally cooperated with FCM Reed's investigation. Mr. Moore also offered to allow DCS to inspect his home, but that offer was declined. Two days thereafter, FCM Reed met with the children and Ms. Moore at her home. Mr. Moore's children reported to FCM Reed that they felt safe in his home, and the children and Ms. Moore all denied that there was any abuse or violence. On June 20, 2019, Mr. Moore received an email from Ms. Moore's attorney, Robin Niehaus, alleging that he was

---

[3] Specifically, Indiana Code section 31-17-4-1(a) provides:

> A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

refusing to cooperate with the DCS investigation, and informing Mr. Moore that she was filing a motion with the court for an order preventing him from having any parenting time altogether or requiring that his parenting time be supervised until such time as he cooperated with DCS. Ms. Neihaus is also named as a Defendant in the Complaint.

On June 25, 2019, Ms. Moore filed a motion requesting that Judge Chavis: (1) modify the parenting time arrangement currently in place that allowed Mr. Moore to have extended, unsupervised parenting time with the children, (2) immediately cease parenting time due to mental abuse, (3) allow Mr. Moore only supervised parenting time, (4) order Mr. Moore to undergo anger management and parenting classes, (5) and order him to pay Ms. Moore's attorney's fees. On June 27, 2019, the court issued an order granting Ms. Moore's request for a Guardian ad Litem ("GAL") to represent their children, and appointing Kids' Voice of Indiana for that purpose. Kids' Voice is also named as a Defendant in Mr. Moore's lawsuit.

On July 9, 2019, FCM Reed issued her Assessment of Alleged Child Abuse or Neglect, concluding that the allegation against Mr. Moore was unsubstantiated. On July 23, 2019, Judge Chavis conducted a hearing on Ms. Moore's motion to modify Mr. Moore's parenting time, during which FCM Reed confirmed the accuracy of her assessment and noted that Mr. Moore had cooperated with the DCS investigation. Ms. Moore allegedly did not provide any evidence that Mr. Moore might endanger the children's physical health or significantly impair their emotional development. Because the children and Mr. Moore had by that time been separated for only thirty-seven days,

Judge Chavis explained that in his judgment supervised parenting time was necessary and an appropriate pathway towards the reuniting of Mr. Moore and his children. Mr. Moore objected both to the supervision of his parenting time and to Judge Chavis's alleged failure to articulate a specific finding of endangerment, as Mr. Moore believed was legally required. Judge Chavis responded by informing Mr. Moore that: "If it's a preliminary motion[,] you're not entitled to [the Court issuing special factual findings and conclusions pursuant to Indiana Trial Rule 52(A)]."[4] Docket No. 1, at 7. That same day, the Court also granted Ms. Moore's Emergency Request for Specific Ban of Behavior against Mr. Moore, and prohibited him from going to the home, property or street in front of the home of Ms. Niehaus, or within fifty feet of her car, or to the building or parking lot of her office.

The preliminary nature of Judge Chavis's decision to supervise Mr. Moore's parenting time is reflected in his July 25, 2019 order summarizing the events of the hearing conducted on July 23, 2019. In this order, Judge Chavis stated that Ms. Moore appeared in person and by her counsel, Ms. Niehaus, that Mr. Moore appeared in person and *pro se*, and that the children's GAL, Kids' Voice, appeared by its attorneys Emily Angel and Chelsea Shelburne, both of whom have also been named as Defendants in Mr. Moore's

---

[4] Specifically, Indiana Trial Rule 52(A) provides:

> In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39) shall find the facts specially and state its conclusions thereon.

Complaint. The order further noted that during the hearing witnesses were sworn, testimony was heard, and evidence was considered by Judge Chavis, resulting in the issuance of the following order:

1. Ms. Moore shall retain primary physical custody of the children.

2. Mr. Moore shall have supervised parenting time with the children, which the Court may reconsider after reviewing the supervisor's notes.

3. Mr. Moore's "supervised parenting time shall be at his own expense. The parenting time supervisor shall be an agency or private supervisor selected by the Domestic Relations Counseling Bureau (DRCB). Kids' Voice shall provide DRCB with options for supervised parenting time."

4. Ms. Moore and Mr. Moore "shall be mindful of their tone and shall not name call or make disparaging comments about one another both in front of the children, individually or collectively, or otherwise."

5. "The parties shall not coach the children, individually or collectively, or otherwise."

6. "The parties shall not discuss with or inform the children, either individually or collectively, of any of the issues being litigated in these proceedings."

7. "Neither party shall employ the use of quotes in correspondence. Neither party shall draw or color on any correspondence between parties."

8. "The parties shall be referred to the DRCB and are ordered to follow all directions of the DRCB regarding services and appointments. This order includes following all recommendations of any service providers."

9. "The DRCB shall conduct a custody evaluation. Both parties shall cooperate with the DRCB in completing the custody evaluation. As a part of the custody evaluation, the DRCB shall conduct home visits with both" Ms. Moore and Mr. Moore.

10. "Both parties shall submit to a psychological evaluation and follow the recommendations made by the evaluator. [Ms. Moore] and [Mr. Moore] and Father shall submit proof to this Court that they have completed the

7

psychological evaluations and followed the recommendations contained within the evaluation."

11. Mr. Moore "shall submit to anger management courses as referred by the DRCB."

12. Mr. Moore "shall participate in parenting classes as referred by the DRCB."

13. "Neither party shall go to the home or office of any individual (attorney or otherwise) working in a professional capacity in this matter without an express invitation or scheduled appointment."

14. "Due to the contentiousness between the parties, the Court shall conduct an in-camera interview of the children. …There will be no record made of the interview. Neither the Parties nor counsel shall be permitted to attend or even be around the 5th floor, west wing of the City-County Building when the interview is conducted. In the event that any party asks the children what was discussed in the interview and that matter is proven in Court, the Court shall consider this act a violation of the Court's Order, will find the violating party in contempt of court and will fashion an appropriate sanction."

Docket No. 31-1, at 1−3. It is unclear precisely when the court's interview of Mr. Moore's children occurred, but we note that under Indiana Code section 31-17-4-1, "[t]he court may interview the child in chambers to assist the court in determining the child's perception of whether parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Ind. Code § 31-17-4-1(b). On August 16, 2019, Mr. Moore moved to reconsider Judge Chavis's July 25, 2019 order, arguing that supervised parenting time was erroneously ordered because there was no specific finding of endangerment or impairment by the court. This motion was denied by the court on August 23, 2019. Mr. Moore also sought to appeal the July 25, 2019 order to the Indiana Court of Appeals, but the appeal was denied.

Due to Mr. Moore's lack of progress with the DRCB, Judge Chavis *sua sponte* issued an interim order on September 18, 2019, which addressed, among other things, Mr. Moore's refusal to sign the contract for supervised parenting time services "because he does not have findings from the court regarding supervised parenting time [and] stating that it would be 'fraudulent' for him to sign." Docket No. 31-4, at 2. The Court explained that Mr. Moore had "misconstrued the meaning and intent of the Contract," as it "does not require that the visiting parent provide a copy of the findings of fact and conclusions of law; especially where there has yet to be a complete adjudication of the merits of the allegations raised in the various motions." *Id.* "Simply put," the supervised parenting time provider "only required [Mr. Moore] to bring a copy of the Court's July 25, 2019 Order with him to the intake assessment." *Id.* "Furthermore, the [July 25, 2019] Order clearly states the findings upon which [the provider] was to conduct supervised parenting time." *Id.* Judge Chavis explained that the order issued on July 25, 2019 was "an interim order indicating that, while this custody action remains pending, [Mr. Moore] shall have supervised parenting time with his children and that supervision of parenting time would be overseen by either an agency or private supervisor selected by DRCB." *Id.* at 2−3. The court "further set parameters for how parenting time should be conducted and how interaction with the children should take place." *Id.* at 3. Thus, Mr. Moore's "concern that executing the contract would be fraudulent is without merit and is essentially a pretext for avoiding the directives of the Court." *Id.* The court advised Mr. Moore that it would "continue to review DRCB's progress reports leading up to the November 7, 2019 final hearing." *Id.* It also would not "entertain any further allowances or accommodations in

order to compel [Mr. Moore] to comply with the [c]ourt's directives." *Id.* Mr. Moore filed a motion to correct errors as to the court's order from September 18, 2019, and also tried to appeal the order to the Indiana Court of Appeals. Both were denied.

On October 29, 2019, Kids' Voice filed a motion to be released as the children's GAL and to withdraw its attorneys' appearances in the case, based on Mr. Moore's concerning behavior. Kids' Voice explained that it was extremely alarmed by Mr. Moore appearing unannounced at Ms. Niehaus's home and sending what Kids' Voice's counsel would consider to be "threatening letters" to Ms. Niehaus. Docket No. 31-5, at 1−2. Because of his behavior, Kids' Voice did not "feel comfortable assigning a volunteer GAL to conduct home visits and otherwise do an investigation in this case, due to concerns for their safety." *Id.* at 2. The Court conducted a status hearing on November 7, 2019, and granted Kids' Voice's motion that same day. On November 20, 2019, attorney Megan Gehring was appointed by Judge Chavis to serve as the children's GAL. She is also named as a Defendant in Mr. Moore's present cause of action.

On December 6, 2019, another status conference was conducted in the child custody case, and Judge Chavis issued an order later that day finding that Mr. Moore had completed parenting classes and anger management services, that the parties agreed that Mr. Moore and his children should undergo reunification therapy, and that a modification of the supervised parenting time as previously ordered was warranted. On March 16, 2020, attorney Angela Swenson filed an appearance on behalf of Ms. Moore. Ms. Swenson is also named as a Defendant in the present cause of action.

On June 12, 2020, Judge Chavis issued *sua sponte* an interim order regarding Mr.

Moore's supervised parenting time in which he explained that Mr. Moore's parenting time

had been supervised since the July 23, 2019 hearing with a "later modification that

allowed for a hybrid supervised parenting time model where [his] visitation would

include brief periods of unsupervised time during the supervised visits." Docket No. 21-3,

at 1. The court further stated that it had intended to address the status of supervised

parenting time at a hearing scheduled for April 15, 2020. However, on April 3, 2020, the

court vacated that hearing based upon the public health emergency occurring in Indiana

relating to the COVID-19 pandemic. Thus, the court, having reviewed all reports

submitted by Mr. Moore's parenting time supervisor, *sua sponte* ordered that:

> supervised parenting time needs to remain in place for the time being.
> However, because of the gradual progress that [Mr. Moore had] made
> regarding his parenting techniques and the apparent warming of relations
> with his children, the Court finds that an increase in supervised parenting
> time is in order. This increase is additionally warranted because summer has
> begun which should provide a little more scheduling flexibility for
> supervised visitation.

*Id.* at 2. Judge Chavis also ordered "an increase in supervised parenting time on Mondays

from the original 4 hours to 7 hours on that day. Because the Court is increasing

parenting time on this day, the Court terminates the hybrid model and imposes full

supervision for the duration of any given visit, not just Mondays." *Id.* The order further

advised that the court would review and analyze future reports from the parenting time

supervisor to "determine if the Court needs to return to the visitation model that has

governed Mr. Moore's parenting time up to this point." *Id.* Mr. Moore moved to correct

errors in court's June 12, 2020 order, arguing again that Judge Chavis erroneously restricted his parenting time without the requisite finding of endangerment or impairment. This motion was denied by the court.

On August 25, 2020, Mr. Moore moved to continue the final hearing set for September 2, 2020, stating in part that the final hearing should be converted to a status conference to discuss the modification or abolition of the supervised parenting time arrangement. On August 27, 2020, the Court granted the motion and set a status conference on September 2, 2020, to address the issues raised by Mr. Moore.

At this hearing, Ms. Moore appeared in person and by her counsel, Ms. Swenson. Mr. Moore and Ms. Gehring, the children's GAL, also appeared in person at the hearing. "The Court, after hearing from the witnesses, receiving arguments from the parties and otherwise being duly advised in the premises," issued the following order on September 4, 2020:

1. "At the September 2, 2020 hearing, [Mr. Moore] testified that he has established positive relationships with the children during his supervised parenting time. He has improved how he interacts with the children. However, [Mr. Moore] argued that the addition of a third party in his parenting time is keeping him and the children from returning to normalcy with regard to a parent-child relationship."

2. "[Mr. Moore] disagrees with [his parenting time supervisor's] parenting suggestions believing that it keeps him from adequately parenting his children, specifically [G.M.], and from directing them as he deems appropriate."

3. "[Mr. Moore] testified that [G.M.] is often fatigued during his visits with him and this is matter of contention for [Mr. Moore]. [G.M.] has

12

significant allergies and [Mr. Moore] believes that he should be more involved with [G.M.]'s medical treatment."

4. "[Mr. Moore] seeks unsupervised parenting time and requests that the Court order [Mr. Moore] to be responsible for transporting the children to and from their medical appointments or at least be allowed to attend medical appointments."

5. "For support on lifting supervised parenting time, [Mr. Moore] referred to a statement from the GAL in her March 7, 2020 report where she stated that she would be comfortable with the supervisor steeping out as the children would have their reunification therapist to whom they could express their concerns."

6. "[Ms. Moore] testified that she has continued concerns about [Mr. Moore]'s ability to interact positively with the children without guidance and direction from [his parenting supervisor]. [Ms. Moore] argues that each visit that [Mr. Moore] has with the children, there is always a moment when [his parenting supervisor] has to redirect [Mr. Moore] to make more positive choices in his interaction with the children. [Ms. Moore] further expressed significant concerns about [Mr. Moore] transporting the children to and from medical appointments and even being allowed to attend the medical appointments. In essence, she argues that his participation in the medical appointments would be disruptive to the children.

7. In her testimony, the GAL clarified her statement about reunification therapy in lieu of continued supervised parenting time. She explained that once reunification therapy began that she would feel more comfortable with unsupervised parenting time as the children could confide in the reunification therapist to address concerns during [Mr. Moore]'s visitation. However, she disputed the notion that mere participation in the initial intake screening was sufficient for her to be satisfied that reunification therapy was underway and that unsupervised parenting time could be lifted. The GAL wanted to see progress made with reunification therapy first.

8. Pursuant to the Court's authority to enter interim orders pending final hearing and based upon the best interests of the children, the Court denies [Mr. Moore]'s request to lift unsupervised parenting time. Evie Jacobs, of the LOTUS Group will serve as the family's reunification therapist. The Court orders the GAL to advise Ms. Jacobs about the current supervised parenting time restriction and to have Ms. Jacobs submit a report to the

GAL, who will in turn file an updated report to the Court, should Ms. Jacobs believe that the time is right to lift unsupervised parenting time.

9. Furthermore, it is clear from the interaction between the parties at the hearing and during the pendency of this matter that difficulties still exist between [Mr. Moore] and [Ms. Moore]. The Court is concerned that [Mr. Moore] transporting the children to and from or even his presence at the children's medical appointments would have a negative impact on the children at this juncture. The Court denies [Mr. Moore]'s request to transport the children to and from or attend their medical appointments.

10. However, [Mr. Moore] needs to be made aware of the status of the children's health and wellness. Therefore, [Ms. Moore] shall make sure to promptly provide medical information about the children to [Mr. Moore]. Any questions or concerns that [Mr. Moore] has about the children's treatment regime should be discussed with Ms. Jacobs and the GAL.

11. Once the family has been immersed in reunification therapy, the Court orders the GAL to obtain a report from Ms. Jacobs on her best estimate for when she believes reunification therapy will be completed. Upon receipt of that estimate, the Court will schedule a final hearing soon thereafter.

Docket No. 21-4, at 1−4. Mr. Moore unsuccessfully moved to correct errors in this order, claiming again that the court needed to make a specific finding of endangerment. In denying this motion, the court explained that "hearing in this matter has not concluded and no final judgment has been issued. The hearing on September 2, 2020 was a status conference." Docket No. 1, at 10. Judge Chavis expressly denied Mr. Moore's motion to correct errors because the order that was issued on September 2, 2020, "was not a final order but a status conference held at [Father's] request." *Id.* Mr. Moore tried to appeal Judge Chavis's order denying his motion to correct errors, but his appeal was dismissed.

In early 2021, the child custody case was transferred from Judge Chavis to Judge Marie Kern of the Marion County Superior Court. On March 30, 2021, Judge Kern issued an order approving a mediated agreement between Mr. Moore and Ms. Moore.

1. Joint Legal - No change to current order as to joint legal custody and in-person participation at doctor appointments. However, [Mr. Moore] shall be allowed to attend doctor appointments virtually. [Ms. Moore] shall provide advanced notice of the appointments.

2. [Mr. Moore]'s supervised parenting time shall continue. However, the goal is to phase in parenting time until [Mr. Moore] has IPTG parenting time in full. The phase-in is to be completed within 6 months provided that the Reunification Therapist (RT) agrees upon and implements each phase-in and ultimately the IPTG. Once [Mr. Moore] achieves IPTG parenting time, then that shall be the existing order for parenting time. And any change to that order shall require a new petition be filed with the Court.

   The RT shall make the final decisions on phased-in parenting time but only after agreement of the kids' therapists.

3. To accomplish the Reunification therapy, the Reunification therapist shall consult with the personal therapists of the children, the supervisor, and the parents. The RT shall include both parents and children in the reunification therapy and shall consider each of their concerns. The RT shall not maintain, or require confidentiality between the reunification therapy sessions by the children, or parents with regard to the parents, GAL, and Court. The RT shall ensure that the children have opportunities for 1 on 1 sessions with the RT, and without the parents present to ensure they can speak freely with the RT.

4. If the need arises, and a parent petitions the Court, and the Court agrees to change RTs, then each parent shall propose 2 RTs within 48 hours to the Court. The Court shall pick one of them for the parties within another 48 hours. The choices shall be picked from the children's Medicaid insurance listing.

5. This agreement resolves all pending custody and parenting times petitions with this Court. The hearing on April 26th and April 27th shall be vacated.

Docket No. 21-5, at 1−2.

When the case at bar was filed, Mr. Moore averred that the goal of unsupervised parenting time had still not been achieved. He also claims that his relationship with G.M. has been strained, as evidenced by a police officer informing Mr. Moore, after G.M. had "fled" from Mr. Moore, that G.M. was "terrified" of him. *Id.* at 11. Mr. Moore's relationship with E.M. is also allegedly strained and has not returned to the "more harmonious level" that it was prior to both the DCS investigation and the restriction on Mr. Moore's parenting time imposed and upheld numerous times by Judge Chavis. *Id.* The publicly available docket for the child custody case indicates that on March 25, 2022, Mr. Moore moved to modify the custody and parenting time arrangement imposed by Judge Kern's order. The case remains pending based on the new issues raised by Mr. Moore's motion on March 25, 2022.

On September 9, 2022, Mr. Moore filed this federal lawsuit, alleging that Judge Chavis's orders requiring supervised parenting time without a finding of endangerment under Indiana Code section 31-17-4-1(a) violated his constitutional rights, and caused him financial and emotional harm. Specifically, Count I of Mr. Moore's Complaint asserts a 42 U.S.C. § 1983 claim against Judge Chavis for violating his Due Process Rights under the Fourteenth Amendment of the United States Constitution, based on Judge Chavis's restriction of Mr. Moore's parenting time without a specific finding of endangerment. In Count II, Mr. Moore advances a claim for "Financial Deprivation Associated with Denial of Parenting Rights," claiming that he has "incurred great financial cost of paying for the unwarranted Court Orders for Supervised Parenting Time,

for various fees associated with requirements by the Court, for loss of productive time and earnings as a result of continuing to challenge the unwarranted Court Orders for Supervised Parenting Time." Docket No. 1, at 14. In Count III, Mr. Moore alleges a claim against unspecified Defendants for "Alienation of Affections between Father and Children," claiming that his relationships with his children have been irreparably harmed by the court-ordered supervision of his parenting time with them. Finally, in Count IV, Mr. Moore alleges pursuant to 42 U.S.C. § 1983 that the State of Indiana and Judge Chavis violated his rights under the Equal Protection Clause of the Fourteenth Amendment, based on the State's failure to provide a means for a review and remedy of parenting time restrictions, which it has provided for other cases without a finding of endangerment, when Judge Chavis "deliberately chose not to offer such review" to Mr. Moore, and instead subjected him to "a deprivation without stating a cause as is done for others." *Id.* at 15.

Mr. Moore seeks declaratory relief based on a finding that all Defendants violated his rights under the Fourth and Fourteenth Amendments by restricting his parenting time without a finding of endangerment. He seeks an order from our Court to "adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy." *Id.* at 16. He also seeks awards of compensatory and punitive damages against all Defendants, along with costs and attorney's fees, despite his *pro se* status. All Defendants have moved to dismiss Mr. Moore's Complaint in its entirety. Mr. Moore, however, has chosen not to file a response to any of the seven motions to dismiss.

### III.   LEGAL DISCUSSION AND DECISION

The well-entrenched *Rooker-Feldman* doctrine emanated from two cases in which "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 554 U.S. 280, 291 (2005); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District Court of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment." *Exxon Mobil*, 554 U.S. 284 at 291−92. Title 28 U.S.C. § 1257, as long interpreted, vests authority to review a state court's judgment solely in the Supreme Court. *Id.* at 292. Thus, "the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction." *Id.* The Seventh Circuit has repeatedly summarized the doctrine as follows:

> Lower federal courts are not vested with appellate authority over state courts. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced. The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.

*Jakupovic*, 850 F.3d at 902 (quoting *Sykes*, 837 F.3d at 741−42).

"To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, we apply a two-step analysis." *Andrade v. City of Hammond, Ind.*, 9 F.4th 947, 950 (7th Cir. 2021).

"First, we consider whether a plaintiff's federal claims are 'independent' or, instead, whether they either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Id.* (quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019)). "The 'inextricably intertwined' determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes*, 837 F.3d at 742 (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)). "Put another way, we ask 'whether the district court is essentially being called upon to review the state court decision.'" *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (quoting *Jakupovic*, 850 F.3d at 902). "If not, and[,] if the plaintiff's alleged injury is 'independent' of the judgment, then *Rooker-Feldman* does not bar federal court jurisdiction." *Id.* (quoting *Andrade*, 9 F.4th at 950). "But if they 'directly' challenge or are 'inextricably intertwined' with a state-court judgment, then we move on to step two." *Andrade*, 9 F.4th at 950. "At step two, we determine 'whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings.'" *Id.* (quoting *Jakupovic*, 850 F.3d at 902). "Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction." *Id.*

Despite its frequent applications, the *Rooker-Feldman* doctrine is itself a narrow rule. *Jakupovic*, 850 F.3d at 902 (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)). "[F]ederal jurisdiction does not terminate automatically on the entry of judgment in a state court, as independent claims are jurisdictionally firm." *Id.* (internal citations

omitted). Indeed, the Supreme Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Exxon–Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The doctrine is instead "confined to the cases of the kind from which the doctrine acquired its name: cases brought by state-court losers ... inviting district court review and rejection of [those state court's] judgments." *Id*. at 294. For example, the Seventh Circuit recently held in *J.B. v. Woodward* that because the plaintiff had "filed his federal lawsuit while the domestic relations court's proceedings over [the specific parenting time dispute] remained ongoing, he [was] not a state-court loser" for purposes of the *Rooker-Feldman* doctrine. 997 F.3d 714, 723 (7th Cir. 2021). The Seventh Circuit has repeatedly held, however, that "interlocutory orders entered prior to the *final disposition* of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Bauer v. Koester*, 951 F.3d 863, 867 (7th Cir. 2020) (quoting *Sykes*, 837 F.3d at 742). In other words, for a federal claim to be barred by the *Rooker-Feldman* doctrine, a final state court judgment must have been entered prior to the federal claim being brought, and "there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment" or order issued prior to the final judgment. *Jakupovic*, 850 F.3d at 903 (quoting *Sykes*, 837 F.3d at 742).

The case before us presents a somewhat complicated application of the *Rooker-Feldman* doctrine because Mr. Moore's underlying child custody case is still pending in

state court. The Seventh Circuit's recent decision in *Hadzi-Tanovic v. Johnson*, however, provides guidance to us in this situation. There, plaintiff's federal claims arose out of a child custody suit in Illinois state court between the plaintiff and her ex-husband. *Hadzi-Tanovic*, 62 F.4th at 396. "After the state court issued an order requiring that [the plaintiff's] parenting time with her children be supervised," she filed suit in federal court, alleging claims under 42 U.S.C. §§ 1983 and 1985 against her ex-husband, the children's GAL, and the state court judge. *Id.* All three defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the state court judge additionally moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), invoking "several doctrines that restrict access to the federal courts: *Rooker-Feldman*, abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the domestic-relations exception to federal jurisdiction." *Id.* at 398. The district court had found that "none of these doctrines was a 'perfect fit for the facts of this case,' but it concluded that dismissal was warranted on general abstention principles." *Id.* (quoting *Hadzi-Tanovic v. Johnson*, 2021 WL 5505541, at *4 (N.D. Ill. Nov. 24, 2021)). The district court had questioned whether the lawsuit "concerned a final order, as *Rooker-Feldman* requires, given both the state court's ongoing supervision of custody and child support arrangements and [the plaintiff's] pending motion for relief from [the trial court's order requiring supervised parenting time]." *Id.* The district court "concluded that abstention was nevertheless appropriate" because any finding in the plaintiff's favor "would require the federal court to 'examine and criticize' the state court's application of family law," and any judgment in the plaintiff's favor "could then be used to interfere with the state court proceedings, and

that, the court concluded, would be an 'unacceptable intrusion into the domain of the state domestic relations court.'" *Id.* at 398−399 (quoting 2021 WL 5505541 at *6).

On appeal, the Seventh Circuit concluded that the *Rooker-Feldman* doctrine did apply. The Court first explained that the "challenged state court judgment in this case was 'rendered before the district court proceedings commenced,' so that [the plaintiff] was a 'state-court loser.'" *Id.* at 399−400. Specifically, the state court judge had "issued his order requiring that [the plaintiff's] parenting time be supervised on June 13, 2018," and the Illinois appellate court dismissed plaintiff's appeal on January 13, 2020. The state court judge's order was "therefore final well before [the plaintiff] filed this federal lawsuit on June 12, 2020." *Id.* at 400. The Seventh Circuit understood the district court's concern that "the order might not be final given the state court's 'continuing management' of child custody issues," but explained that the plaintiff was "challenging an order that was final when she filed this federal lawsuit." *Id.* "State law determines the finality of a state judicial decision." *Id.* (quoting *Mehta v. Att'y Registration & Disciplinary Comm'n*, 681 F.3d 885, 887 (7th Cir. 2012) (finding that, because state law so provided, a state court 'interim' order suspending plaintiff's attorney license was final for purposes of *Rooker-Feldman*)). Applying Illinois law, the Seventh Circuit determined that the state court judge's June 13, 2018 order was "final for *Rooker-Feldman* purposes even though the state court may modify the order in the future." *Id.*

Under Indiana law, "[a]n interlocutory order is one made before a final hearing on the merits and requires something to be done or observed but does not determine the entire

controversy." *In re Paternity of C.J.A.*, 3 N.E.3d 1020, 1028 (Ind. Ct. App. 2014)

(quoting *Bacon v. Bacon,* 877 N.E.2d 801, 804 (Ind. Ct. App. 2007)). A final judgment,

meanwhile, "disposes of all claims as to all parties." *Id.* (citing Ind. App. Rule 2(H);

*Waldrip v. Waldrip*, 976 N.E.2d 102, 109 (Ind. Ct. App. 2012)). In the decision *In re*

*Paternity of C.J.A.*, the Indiana Court of Appeals was considering an appeal from a child

custody order that contained the following language:

> The [c]ourt's temporary award of primary physical possession to Mother
> shall become a final order without the need for further hearing if Mother
> restores her residence in Tippecanoe County on or before March 31, 2013.
> In accordance with Indiana law, however, a final order remains subject to the
> Court's continuing jurisdiction. In the event the order becomes final, Father
> shall have liberal parenting time with [the child] … If Mother fails to re-
> establish her residence in Indiana by March 31, 2013, [the child's] best
> interests would be served by and primary physical custody shall be awarded
> to Father on April 1, 2013, without the need for further hearing.

*Id.* The Indiana Court of Appeals ultimately determined that the appealed order was a

final judgment, explaining that "[i]n its order, the trial court resolved the issue of primary

physical custody of [the child], although custody is dependent on Mother's decision as to

where she will reside." *Id.* "The temporary award of custody expires 'no later than March

31, 2013,' and the court ruled that Mother will retain custody if she chooses to reside in

Indiana." *Id.* "However, Father will automatically obtain primary physical custody of [the

child] on that date without any further hearing if Mother remains in South Carolina." *Id.*

"When read in its entirety," the Indiana Court of Appeals concluded, "the order clearly

adjudicates custody and parenting time regarding [the child], and the trial court expressly

states that no further hearing is required." *Id.* "Importantly, absent appeal, the order

resolves all custody and parenting time issues unless and until one of the parties files a subsequent motion to modify custody and/or parenting time." *Id.*

Here, applying Indiana law, we conclude that the series of orders issued by Judge Chavis—and challenged directly by Mr. Moore—are all interlocutory orders. Judge Kern's order issued on March 30, 2021, however, is a final judgment disposing of the specific custody/parenting time dispute that was the subject of Judge Chavis's interlocutory orders. As in *C.J.A.*, though Judge Kern's order was dependent on future events, the finality of the order was not eroded because it provided automatic options without the need for further involvement of the court, absent a parties' new petition. Specifically, Judge Kern's order stated that the phase-in to unsupervised parenting time was to be completed within six months, provided that the Reunification Therapist agreed upon and implemented each step of the phase-in. The Reunification Therapist was to make the appropriate final decisions on phased-in parenting time with the agreement of the children's therapists. Once Mr. Moore achieved full unsupervised parenting time, "that shall be the existing order for parenting time. And any change to that order shall require a new petition be filed with the [c]ourt." Docket No. 21-5, at 1. Indeed, the order specified that if any need arose for a change of Reunification Therapist, the parties must file a new petition with the court. In addition, the order expressly provided that it "resolve[d] all pending custody and parenting times petitions with this Court," allowing Judge Kern to vacate the upcoming final hearing, which was similar to the court's order in *C.J.A.* *Id.* at 1−2.

The finality of Judge Kern's order is not affected by the ability either party has to move to modify it in the future, by the fact that Mr. Moore did move to modify the custody/parenting time arrangement on March 25, 2022, or by the fact that the custody case remains pending as to his new motion. *See C.J.A.*, 3 N.E.3d at 1028; *Hadzi-Tanovic*, 62 F.4th at 400. Judge Kern's March 30, 2021 order embodied a final disposition of the dispute and was final when Mr. Moore initiated this lawsuit on September 9, 2022. *See Hadzi-Tanovic*, 62 F.4th at 400 ("the court noted that the order might not be final given the state court's 'continuing management' of child custody issues. We understand the concern, but [the plaintiff] is challenging an order that was final when she filed this federal lawsuit."). Because Mr. Moore is challenging interlocutory orders that were entered prior to the final disposition of his custody case, his federal lawsuit is "not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Bauer*, 951 F.3d at 867 (quoting *Sykes*, 837 F.3d at 742). Mr. Moore is thus a "state court loser," as that phrase has been used in *Rooker-Feldman* parlance. He has filed this action "after the state proceedings ended," such that the *Rooker-Feldman* doctrine may apply. *Andrade*, 9 F.4th at 950 (quoting *Exxon−Mobil*, 544 U.S. at 281). Accordingly, we now shall undertake the required two-step analysis to determine whether the doctrine does, in fact, bar an exercise of our jurisdiction over this case.

At the first step of the *Rooker-Feldman* analysis, we consider whether Mr. Moore's "federal claims are 'independent' or, instead, whether they either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Id.* (quoting *Swartz*, 940

F.3d at 391). "The 'inextricably intertwined' determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes*, 837 F.3d at 742 (quoting *Taylor*, 374 F.3d at 532). "Put another way, we ask 'whether the district court is essentially being called upon to review the state court decision.'" *Hadzi-Tanovic*, 62 F.4th at 399 (quoting *Jakupovic*, 850 F.3d at 902). For the doctrine to apply, "there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Sykes*, 837 F.3d at 742 (citing *Exxon–Mobil*, 544 U.S. at 293; *Commonwealth Plaza Condo. Ass'n v. City of Chi.*, 693 F.3d 743, 746 (7th Cir. 2012); *Kelley v. Med–1 Solutions, LLC*, 548 F.3d 600, 607 (7th Cir. 2008)).

Here, it is plain to see that there is no way for the injuries complained of by Mr. Moore to be separated from Judge Chavis's orders. *Id.* In Count I, Mr. Moore bases his 42 U.S.C. § 1983 claim against Judge Chavis on the alleged violation of his Due Process Rights under the Fourteenth Amendment of the United States Constitution by Judge Chavis issuing court orders that required supervision of his parenting time, without having made a specific finding of endangerment under Indiana Code section 31-17-4-1(a). He seeks not only a declaration that these orders were unconstitutional, but also requests that our court "adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy." Docket No. 1 at 16. As such, Mr. Moore's claim directly challenges Judge Chavis's orders. His alleged injury for which he seeks redress—the imposition of supervised parenting time without a specific finding of

endangerment under Indiana Code section 31-17-4-1(a)—flows directly from Judge Chavis's orders. Any ruling in favor of Mr. Moore would "require us to contradict the state court's orders," but "*Rooker-Feldman* bars review of claims that allege injury caused by a state-court order." *Bauer*, 951 F.3d at 866 (citing *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1062 (7th Cir. 2018); *Swartz*, 940 F.3d at 391).

In Count II of his Complaint, Mr. Moore seeks to recover for the "Financial Deprivation Associated with Denial of Parenting Rights," claiming that he has "incurred great financial cost of paying for the unwarranted Court Orders for Supervised Parenting Time, for various fees associated with requirements by the Court, for loss of productive time and earnings as a result of continuing to challenge the unwarranted Court Orders for Supervised Parenting Time." Docket No. 1, at 14. Specifically, Mr. Moore challenges Judge Chavis's orders requiring that he: (1) must have supervised parenting time, for which he must pay between $25 to $30 an hour, (2) attend and pay for anger management and parenting classes, (3) undergo and pay for a psychological evaluation, and (4) attend and pay for family reunification therapy. He levels direct challenges to Judge Chavis's orders in his lawsuit. Moreover, Mr. Moore alleges that he incurred injury in the form of lost productive time and earnings, based on the time he spent seeking to reverse Judge Chavis's "unlawful parenting time restriction." *Id.* As such, this claim is inextricably intertwined with Judge Chavis's orders. *See Swartz*, 940 F.3d at 391. Indeed, the injuries for which Mr. Moore seeks redress stemmed entirely from Judge Chavis's orders, and any finding in favor of him would "require us to contradict the state court's orders," which,

again, is precisely what *Rooker-Feldman* prohibits. *Bauer*, 951 F.3d at 866 (citing *Moore*, 908 F.3d at 1062).

In Count III, Mr. Moore advances a claim against unspecified Defendants for the "Alienation of Affections between Father and Children," claiming that his relationships with his children have been irreparably harmed by the court-ordered supervision of his parenting time with them and that he has "lost unrecoverable moments of joy and comfort associated with the unrestricted parenting time that he would have had with the children absent the false allegations, denial of rights, and omissions by the Defendants." Docket No. 1, at 15. Each named Defendant, per Mr. Moore's description, contributed to this deprivation by either seeking this restriction on his parenting time without a finding of endangerment, or by not objecting to the imposition of the restriction by Judge Chavis absent the finding of endangerment. Again, this claim is without doubt inextricably intertwined with Judge Chavis's orders because the injury Mr. Moore cites—the strained relationship with his children based on the supervision of his time with them—was the consequence of several orders issued by the state court. *See Swartz*, 940 F.3d at 391 ("Because the injury the Swartzes protest—the seizure and subsequent permanent placement of their livestock—was effectuated by several orders of the [state court], their claims are inextricably intertwined with state court judgments."). To emphasize, we say again: the injuries for which Mr. Moore seeks redress resulted from Judge Chavis's orders, and any finding in favor of Mr. Moore would necessarily "require us to contradict

28

the state court's orders," which is precisely what *Rooker-Feldman* prohibits. *Bauer*, 951 F.3d at 866 (citing *Moore*, 908 F.3d at 1062).

Finally, in Count IV, Mr. Moore frames another 42 U.S.C. § 1983 claim against the State of Indiana and Judge Chavis for violating his rights under the Equal Protection Clause of the Fourteenth Amendment, claiming that the State has provided for the review and remedy of other similar child custody cases in which parenting time was erroneously restricted without the issuance of a finding of endangerment, but here the State, through Judge Chavis, "deliberately chose not to offer such review" to Mr. Moore, choosing instead to subject him to "a deprivation without stating a cause as is done for others." *Id.* This claim—like the § 1983 claim alleged in Count I—is clearly a direct challenge to Judge Chavis's court orders. Having concluded that all of Mr. Moore's claims either directly challenge or are inextricably intertwined with state-court orders, we move to consider step two in the *Rooker-Feldman* analysis. *Andrade*, 9 F.4th at 950.

Mr. Moore's "claims are barred under *Rooker-Feldman* only if he had a reasonable opportunity to raise the issues in state court proceedings." *Jakupovic*, 850 F.3d at 904. "The 'reasonable opportunity' inquiry focuses not on ripeness, but on difficulties caused by 'factor[s] independent of the actions of the opposing part[ies] that precluded' a plaintiff from bringing federal claims in state court, such as state court rules or procedures." *Id.* (quoting *Taylor*, 374 F.3d at 534–35). Here, nothing suggests that Mr. Moore did not have a reasonable opportunity to raise the issue of whether Judge Chavis needed to make a specific finding of endangerment under Indiana Code section 31-17-4-1(a); indeed, Mr.

Moore did—by his own admissions and allegations—raise this issue on numerous occasions to the Indiana trial and appellate courts to no avail.

Because Mr. Moore's claims fail to overcome both steps of the *Rooker-Feldman* analysis, this suit is barred "because any finding in favor of [Mr. Moore] would require us to contradict the state court's orders." *Bauer*, 951 F.3d at 866 (citing *Moore*, 908 F.3d at 1062); *see also McCray v. Alejandro R.*, 2021 WL 3418812, at *2 (S.D Ind. Aug. 4, 2021) (Barker, J.) (holding that "the *Rooker-Feldman* doctrine bars federal district courts from reviewing or overturning a state court's decisions, including one related to parental custody."). Were it not for Judge Chavis's orders, none of Mr. Moore's alleged injuries would ever have been incurred by him. *Bauer*, 951 F.3d at 866. "To the extent [Mr. Moore] wishes to contest a ruling related to his custody rights, he must pursue that claim via appellate review in the state court." *McCray*, 2021 WL 3418812 at *2.

Even if the *Rooker-Feldman* doctrine were not applicable here, Seventh Circuit precedent would still compel us to abstain from exercising jurisdiction. In *J.B. v. Woodward*, the plaintiff had "filed his federal lawsuit while the domestic relations court's proceedings over [the specific parenting time dispute] remained ongoing, [so] he [was] not a state-court loser" for purposes of the *Rooker-Feldman* doctrine. 997 F.3d at 723. Nevertheless, the Seventh Circuit concluded that even though the doctrine was not an "exact fit," the "principles of comity, equity, and federalism counsel us to abstain from exercising jurisdiction over [the plaintiff's] § 1983 claims." *Id.* at 724. "To insist on literal perfection" of *Rooker-Feldman* or other abstention doctrines would "risk[] a serious

federalism infringement" because the domestic relations proceeding remained ongoing in state court, and the plaintiff's "complaint makes plain that the entire design of his federal action: to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Id.* at 723. The plaintiff's "requests for declaratory and injunctive relief reinforce this observation." *Id.* "Indeed, granting declaratory or injunctive relief would provide [the plaintiff] with an offensive tool to take to state court to challenge that judge's orders." *Id.* "In these circumstances, federal courts need to stay on the sidelines." *Id.* "The adjudication of [the plaintiff's] due process claims threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.* (citation omitted); *see also McCray*, 2021 WL 3418812, at *2 ("It is well-established that federal courts do not have subject matter jurisdiction to adjudicate child custody disputes."). Accordingly, the Seventh Circuit affirmed the complaint's dismissal under the "foundational principles of our federal system." *J.B.*, 997 F.3d at 725. Thus, we hold that if we had not found the *Rooker-Feldman* doctrine to bar jurisdiction over Mr. Moore's Complaint, the Seventh Circuit's decision in *J.B.* would compel that we abstain from exercising jurisdiction here.

## IV.    CONCLUSION

Accordingly, Mr. Moore's Complaint [Docket No. 1] is **DISMISSED** without prejudice. *See Jakupovic*, 850 F.3d at 904 (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438–39 (7th Cir. 2004)). Mr. Moore shall have **FOURTEEN DAYS** in which to show cause why final judgment with prejudice should not enter against him. We **GRANT** the following Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(1): [Docket No. 17], [Docket No. 20], [Docket No. 37], and [Docket No. 39].[5] We **DENY AS MOOT** the following Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6): [Docket No. 10], [Docket No. 30], and [Docket No. 33].

IT IS SO ORDERED.

Date:      5/8/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRIAN S. MOORE
6038 PRIMROSE AVENUE
INDIANAPOLIS, IN 46220

Denise Faye Hayden
Denise F. Hayden, Attorney at Law
dhayden@lacylawoffice.com

---

[5] We note that Docket No. 37 is granted under the *Rooker-Feldman* doctrine, not the domestic-relations exception.

32

Logan C. Hughes
Reminger Co. LPA - Cleveland
lhughes@reminger.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Curtis T. Jones
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
cjones@boselaw.com

John P. Lowrey
City of Indianapolis
john.lowrey@indy.gov

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov

Anthony Simonton, Jr.
Ogletree Deakins Nash Smoak & Stewart
anthony.simonton@ogletree.com

John Carl Trimble
LEWIS WAGNER, LLP
jtrimble@lewiswagner.com